IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

DR. THOMAS PAYNE                                                                                    PLAINTIFF

V.                                                                           CAUSE NO.: 1:12CV41-KS-MTP

THE UNIVERSITY OF SOUTHERN MISSISSIPPI,
DR. MARTHA SAUNDERS, Individually and Officially,
DR. LISA NORED, Individually and Officially, DR.
ROBERT LYMAN, Individually and Officially, DR. JOE
WHITEHEAD, Individually and Officially, DR. DALE
LEDFORD, Individually and Officially Dr. REX GANDY
Individually and Officially                                                                      DEFENDANTS

## USM DEFENDANTS' MEMORANDUM BRIEF IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

### INTRODUCTION

In his Complaint, Plaintiff asserted fourteen claims against USM and six individual Defendants in their official and individual capacities. The Court dismissed all fourteen claims due to insufficient evidence and Plaintiff's wholesale failure to prove a *prima facie* case. Where all of Plaintiff's claims were meritless, without foundation and legally deficient, the USM Defendants are entitled to an award of reasonable attorneys' fees pursuant to 42 U.S.C. § 2000e-5(k), 42 U.S.C. § 1988 and 28 U.S.C. § 1927.

### UNDERLYING FACTS

Plaintiff filed his Complaint on December 2, 2011 and alleged a wide variety of claims against all individual Defendants in their official and individual capacities and against USM. Pursuant to 42 U.S.C. § 1983, the Plaintiff asserted claims for alleged violations of 1) right to procedural due process, 2) right to substantive due process, 3) right to equal protection, 4) First Amendment right to be free from retaliation for protected speech, 5) First Amendment right to association. Pursuant to Title VII, the Plaintiff asserted claims of 1) retaliation regarding

applications for outside employment, 2) retaliation regarding his 2008 evaluation, 3) retaliation regarding denial of promotion, 4) retaliation regarding notice of non-renewal, 5) hostile work environment.  In briefing at the summary judgment stage, the Plaintiff attempted to assert additional claims that were not pled including First Amendment right to free exercise, Title VII discrimination and constructive discharge under Title VII and § 1983.

     Notably, the Plaintiff asserted all of these claims against all the Defendants in their individual and official capacities.  Plaintiff and his counsel were aware that the majority of these claims did not lie against every Defendant.  For example, individual defendants in their official capacities are not persons within the meaning of § 1983 and accordingly, claims for money damages are not cognizable.  Similarly, the Plaintiff pled all Title VII claims against the individual Defendants despite actual knowledge that Title VII claims are only cognizable against the employer USM.  It is apparent from the Complaint that the Plaintiff made no attempt to weed out improper, frivolous or baseless claims.  Instead, he and his counsel knowingly asserted claims that, as a matter of well-established law, did not lie.

     The depositions of the Defendants were taken between June 13, 2013 and June 21, 2013. The depositions elicited no evidence that could assist Plaintiff in establishing his Title VII and § 1983 claims.  At the very latest, on June 21, 2013, Plaintiff and his counsel were aware that insufficient evidence existed to establish a *prima facie* case on any of their claims.

     On October 15, 2013, the Defendants filed motions for summary judgment.  [Doc. 104 and 106]  Plaintiff's briefing in response contained misrepresentations, erroneous legal arguments and attempts to assert new claims not pled in the Complaint.  As a result, the Court entered summary judgment on  all Plaintiff's claims except: 1) Title VII retaliation regarding outside employment; 2) Title VII retaliation regarding 2008 annual evaluation, 3) intentional

infliction of emotional distress and 4) intentional misrepresentation. [Doc. 147] The Court denied the motion for summary judgment as to the Title VII retaliation claims based on the temporal relationship between the protected activity and certain employment actions. Notably, all Title VII and § 1983 claims asserted against Saunders and Lyman were dismissed.

Beginning on May 12, 2014, a trial on the remaining claims was held. At the close of Plaintiff's case in chief, the Defendants made motions for judgment as a matter of law pursuant to Rule 50. The Court granted the motions from the bench and a Judgment of Dismissal was entered on May 20, 2014. [Doc. 195] In its ruling, the Court noted that "it has heard Dr. Payne's best shot" but the best shot amounted to only "ipse dixit" or opinions. In summing up the Plaintiff's proof, the Court held that "I feel" or "I believed" is not sufficient to pass muster. See May 16, 2014 Transcript at p. 14. As to each of Plaintiff's claims, the Court determined that there were no triable issues for a jury to consider and that no rational juror could find for the Plaintiff.

## ARGUMENT

### I.     Award of Attorneys' Fees Pursuant to 2000e-5(k)

As a general rule, litigants must pay their own attorney's fees. *Alyeska Pipeline Co. v. Wilderness Soc'y,* 421 U.S. 240, 247 (1975). However, pursuant to 42 U.S.C. § 2000e-5(k), the Court may, in its discretion, award to the prevailing party reasonable attorneys' fees (including expert fees) as part of the costs. Notwithstanding the prevailing party language, the exceptions generally are applied to prevailing plaintiffs. *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n,* 434 U.S. 412 (1978). A prevailing defendant is entitled to fees "only when a plaintiff's underlying claim is frivolous, unreasonable, or groundless." *Myers v. City of W. Monroe,* 211 F.3d 289 (5th Cir. 2000). As the Supreme Court noted, the district court should

"resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Id.* at 421-22.

To determine whether a suit is frivolous, the Court should determine whether "the case is so lacking in arguable merit as to be groundless or without foundation rather than whether the claim was ultimately successful." *Jones v. Texas Tech Univ.,* 656 F.2d 1137, 1145 (5th Cir. 1981). When considering whether a suit is frivolous, a district court should look to factors such as whether the plaintiff established a prima facie case, whether the defendant offered to settle, and whether the court held a full trial. *Myers,* 211 F.3d at 292. Recovery can be had for fees expended from the beginning of the litigation if the suit is determined to be frivolous, unreasonable or without foundation from the outset, or from such time during the litigation process that the plaintiff should have known that the litigation was such. *EEOC v. Eagle Quick Stop, Inc.,* 2007 U.S. Dist. LEXIS 61954, Civil Action 2:05cv074-KS-MTP (S.D. Miss. 2007). The lack of arguable merit of each Title VII claim will be discussed separately.

    **(A)**    **Title VII Claims Against Saunders and Lyman**

In the Complaint, Plaintiff asserted Title VII claims against USM and all individual Defendants.[1] "Individuals are not liable under Title VII in either their individual or official capacities." *Ackel v. Nat'l Communs., Inc.,* 339 F.3d 376, 381 n.1 (5th Cir. 2003). In response to Defendants' arguments on summary judgment, the Court easily dismissed the Title VII claims asserted against individual Defendants. [Doc. 147 at 32]

---

[1] As the Court found in its memorandum opinion, "Plaintiff apparently asserts all causes of action against all Defendants." [Doc. 147, p. 4.]

At the time the Complaint was filed, Plaintiff and his counsel knew that Title VII claims against individual Defendants were baseless. Yet, Plaintiff continued to prosecute those the claims until they were ultimately dismissed by the Court. The assertion of Title VII claims against individual Defendants meets the definition of frivolous, unreasonable and groundless as required under Fifth Circuit standard established in *Jones*.

**(B)  Title VII Retaliation Regarding Denial of Promotion**

Plaintiff asserted a claim of Title VII retaliation regarding the denial of his promotion to full professor. "In order to file suit under Title VII, a plaintiff first must file a charge with the EEOC within 180 days of the alleged discriminatory act. If and once the EEOC issues a right-to-sue letter to the party who has filed the EEOC charge, that party has 90 days to file a Title VII action." *Price v. Choctaw Glove & Safety Co.,* 459 F.3d 595, 598 (5th Cir. 2006). These time periods act as statutes of limitations. *Hood v. Sears Roebuck & Co.,* 168 F.3d 231, 232 (5th Cir. 1999).

As the Court previously held, "his EEOC charges contain no mention of a promotion denial." [Doc. 147, p. 34]  Thus, the Court dismissed this claim for lack of administrative exhaustion. Despite the obvious fatal defect in this claim, Plaintiff and his counsel pled it in the Complaint and continued to assert the claim through summary judgment. This claim satisfies the definition of frivolous as set forth in *Christiansburg* and *Jones*.

**(C)  Hostile Work Environment**

Plaintiff did not include an explicit claim of hostile work environment in any of his EEOC charges. However, as to hostile work environment claims, "if one act alleged to have created the hostile work environment is timely exhausted, a court may consider the entire scope of the hostile work environment claim." *Filer v. Donley,* 690 F.3d 643, 647 (5th Cir. 2012).

However, as the Court held, Plaintiff made no effort to connect his hostile work environment claim to any Title VII claim that was properly before the Court.

Defendants moved for summary judgment as to this claim on the grounds that Plaintiff failed to exhaust administrative remedies. Plaintiff did not join issue or attempt to mount a response to this argument and the Court dismissed the claim. [Doc. 147, at 33-34] At the time the Complaint was filed, Plaintiff knew that he had failed to exhaust his EEOC remedy, there affording no hope of success. Yet, he pursued the hostile work environment claim anyway. Under § 2000e-5(k), Defendants are entitled to reasonable attorneys' fees incurred defending against this baseless claim.

**(D)     Title VII Retaliation Regarding Notice of Non-Renewal**

In his Complaint, Plaintiff alleged that USM delivered a notice of non-renewal of his contract in retaliation for the filing of grievances and EEOC charges. In response to this claim, Defendants submitted evidence that the non-renewal letter was delivered as a result of declining financial support from the state and a detailed cost cutting scheme that applied to all programs at USM. Eventually, the notice was rescinded and Plaintiff was neither terminated nor lost any time from work or salary.

Instead of presenting evidence that Defendants' legitimate, non-discriminatory reasons were pretext, Plaintiff made the baseless argument that no financial crisis existed. Plaintiff submitted nothing more than his own subjective belief and a weak temporal sequence as proof of pretext. The Court held that Plaintiff submitted insufficient evidence to prove a causal link between the notice of non-renewal and granted summary judgment on this claim. [Doc. 147 at 41]

At the time the Complaint was filed, Plaintiff was well aware that the university-wide effort to prioritize programs and cut costs was because of declining financial support from the state. Plaintiff also knew the preliminary decision to close the Gulf Coast Criminal Justice program was the reason he received the non-renewal letter. Plaintiff's claim of retaliation was baseless at its inception and Defendants are entitled to attorneys' fees incurred in defending this claim.

At the very latest, Plaintiff and his counsel had actual knowledge of the procedures implemented to cope with the financial crisis at the conclusion of Lyman's deposition on June 20, 2013. Lyman testified extensively about the financial crisis experienced by all universities in Mississippi, the actions of the University Priorities Committee, the program appeals process and other facets of the cost cutting procedures put in place by USM. Further, on July 1, 2013, the USM Defendants produced documents Bates marked UPC 001 – UPC 00075 which included documents generated by the actual University Priorities Committee. Despite sworn, uncontradicted testimony and documents to the contrary, Plaintiff continued to claim that no financial crisis even existed. Plaintiff's continued prosecution of this retaliation claim under these circumstances was unreasonable and baseless.

**(E)     Title VII Retaliation Regarding Outside Employment**

Plaintiff alleged that his applications for permission to engage in outside employment were denied in retaliation for filing an internal grievance. Plaintiff further claimed that the Defendants prevented him from practicing law, thereby causing economic damages. In discovery, Defendants produced correspondence and documents related to Plaintiff's outside employment applications that pre-dated his first grievance filed on February 11, 2009. As Plaintiff was aware and as the evidence at trial showed, Plaintiff was advised on September 22,

7

2008 that he needed to submit an application for outside employment and that his work would be limited to 8 to 10 hours per week. Plaintiff submitted his application on January 21, 2009 but failed to specify the number of estimated hours he anticipated spending outside the university. On January 29, 2009, Dr. Lisa Nored asked Plaintiff for an estimated number of hours but he refused to comply.

On February 2, 2009, in response to an inquiry by Dr. Dale Ledford, HR Director Russ Willis advised that USM's policy limited outside employment to 8 to 10 hours per week. On February 10, 2009, Nored drafted a memorandum to Dean Gandy explaining Plaintiff's refusal to give an estimated number of hours at his law practice and that, as a result, she was unable to approve his request. All of these actions occurred *before Plaintiff filed a grievance*. Documents memorializing all of these communications were produced in discovery.

The depositions of Ledford, Nored, Gandy and Willis confirmed the written documentation that USM's outside employment policy was 8 to 10 hours and that Plaintiff's application was denied because of his refusal to specify a number of hours. At the very latest, Plaintiff was aware on June 21, 2013 that he could not present a *prima facie* case of retaliation and that there was no causal connection between his protected activity and the denial of the applications.

At summary judgment, the Court found that USM submitted legitimate non-discriminatory reasons for the denial of the applications, but found a disputed issue of fact as to whether the reasons were pretextual based solely on temporal proximity. At trial, Plaintiff presented no evidence of pretext. To the contrary, the Court held that USM's policy of 8 to 10 hours had been in place for a number of years. Transcript at 15. The Court further found that the applications were denied because of Plaintiff's refusal to state a number of hours on his

application. *Id.* at 16.  Finally, the Court held that there was no evidence that Plaintiff was forbidden the right to practice law.[2] Finding no evidence of pretext or a discriminatory intent, the Court granted judgment as a matter of law on Plaintiff's retaliation claim stemming from outside employment.

At the initial discovery stage, Plaintiff knew that the decision to deny his applications based on USM's policy on outside employment pre-dated his February 11, 2009 grievance. Plaintiff knew, at the latest, on June 21, 2013 that there was no causal connection between any protected activity and the denial of the applications.  Plaintiff knew when the Complaint was filed that the applications were not denied because of retaliation, yet he pursued this claim through trial.  This claim was frivolous, unreasonable and baseless from the inception and proved to be even more so as the case progressed.  At trial, Plaintiff wholly failed to present any evidence of pretext or establish a causal connection. Accordingly, Defendants are entitled to reasonable attorneys' fees incurred defending against this claim.

      **(F)**      **Title VII Retaliation Regarding 2008 Annual Evaluation**

Plaintiff alleged in his Complaint that he received a lower score on his 2008 faculty evaluation in retaliation for the filing of grievances and EEOC charges.   On June 13, 2013, Plaintiff deposed Dr. Rex Gandy who explained the basis of his evaluation.  After discovery and the depositions of the parties, there was no evidence of a retaliatory or discriminatory motive with regard to the 2008 evaluation.

The Court denied Defendants' motion for summary judgment on this claim due to the temporal proximity and the importance of annual performance reviews to the Plaintiff's future

---

[2] "The only place that came from was Tom Payne in his testimony, and it's just not true." Transcript at 17.

career. However, at trial, the Plaintiff wholly failed to present any evidence of pretext or that Gandy's evaluation was in retaliation for protected activity. The proof at trial overwhelmingly showed that Plaintiff received low evaluation scores due to his poor record of publications and his meager presence on campus. The Court held that the Plaintiff's proof amounted to nothing more than his subjective opinions and beliefs. The Defendants also established that Plaintiff's record of publications and presence on campus were issues of concern well before the 2008 evaluation. Transcript at 14.

At the very latest, at the conclusion of the Defendants' depositions, Plaintiff knew that there was no evidence to support his subjective belief of retaliation. Nevertheless, Plaintiff pursued this claim through trial. This claim was dismissed because the Plaintiff was unable to establish the *prima facie* elements required. While that alone is insufficient to support a finding of frivolity, it is clear that a claim is frivolous where no evidence to support the claim is submitted at trial. *Myers v. City of W. Monroe,* 211 F.3d 289 5th Cir. 2000). This claim was frivolous from the inception of the litigation and Defendants are entitled to attorneys' fees under § 2000e-5(k).

  **II.**  **Award of Attorneys' Fees Pursuant to 42 U.S.C. § 1988**

Similar to Title VII cases, under 42 U.S.C. § 1988(b), the district court, in its discretion, may allow the prevailing party in a § 1983 case a reasonable attorney's fee as part of the costs. The primary purpose of § 1988 is to encourage private enforcement of the civil rights statutes while also "protecting defendants from burdensome litigation having no legal or factual basis." *Dean v. Riser,* 240 F.3d 505, 508 (5th Cir. 2001). An award of attorneys' fees to a prevailing defendant is "presumptively unavailable" unless the Court finds that the suit is "frivolous,

unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly becomes so," regardless of whether the suit was brought in good faith. *Id.*; *Christiansburg,* 434 U.S. at 422.

A plaintiff's subjective bad faith is not a necessary prerequisite to an award of fees against him. Implicit in this approach is the premise that plaintiff knew or should have known the legal or evidentiary deficiencies of his claim. *Brown v. Chamberburg,* 903 F.2d 274 (3d Cir. 1990) (citing *Christiansburg,* 434 U.S. at 421; *Hughes v. Rowe,* 449 U.S. 5, 14 (1980)). Plaintiff's § 1983 claims were likewise frivolous from the inception of the litigation. Plaintiff had no good faith belief that Saunders or Lyman deprived him of a constitutional right. The facts set forth above satisfy the rare case that overcomes the presumption that prevailing defendants are not entitled to attorneys' fees. Below, each § 1983 claim is addressed separately and analyzed under the § 1988 standard.

### (A) § 1983 Claims Asserted Against USM and Lyman and Saunders in their Official Capacities

It is well settled that states and state agencies are not "persons" subject to suit under § 1983. *Cheramie v. Tucker,* 493 F.2d 586, 587 (5th Cir. 1974). As this Court and others have repeatedly held, USM qualifies as a state agency. *Suddith v. Univ. of S. Miss.,* 977 So.2d 1158, 1168 (Miss. Ct. App. 2007) (citing *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989)). Likewise, claims against public employees sued in their official capacities are no different than a suit against the State itself. *Id.*

The Court easily dismissed Plaintiff's § 1983 claims for money damages against USM and Saunders and Lyman in their official capacities. These claims were baseless and the Plaintiff and his counsel were well aware of this at the time the Complaint was filed. Nevertheless, Plaintiff continued to pursue these claims through the summary judgment stage. The continued

assertion of frivolous claims against USM, Saunders and Lyman meets the requirement set by *Christiansburg*.

**(B)     First Amendment Retaliation**

Plaintiff alleged that Defendants retaliated against him because of his religion through a variety of adverse employment actions.  Notably, Plaintiff made no allegations of First Amendment retaliation against Lyman or Saunders.  Instead the Plaintiff's allegations centered on the actions of Rebecca Woodrick who was not a party to this case.

It was undisputed that Plaintiff's religious speech was made in connection with his employment as a USM professor.  Plaintiff alleged and argued in briefing that the First Amendment permits him to engage in any religious speech he desires while working as an employee of a public university.  This is an obvious misstatement of the law.  In 2006, the Supreme Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."  *Garcetti v. Ceballos,* 547 U.S. 410 (2006).  Accordingly, when the Complaint was filed in 2011, Plaintiff and his counsel knew or surely should have known that speech made in connection with a public employee's official duties is not protected by the First Amendment.

At summary judgment, the Court, citing *Garcetti*, dismissed Plaintiff's claim of First Amendment Retaliation.  Plaintiff made no argument that *Garcetti* did not apply nor did he assert any good faith argument that the law should be changed.  This demonstrates Plaintiff's tacit acknowledgement that his claim was baseless from its inception.

**(C)     Plaintiff's Due Process Claims**

Plaintiff claimed that the Defendants committed procedural and substantive due process violations involving the notice of non-renewal, outside employment, denials of promotion, annual performance reviews, and grievances.  In order to prove a due process claim, Plaintiff must have been denied life, liberty, or property protected by the Fourteenth Amendment.  *Wilson v. Birnberg,* 667 F.3d 591, 597 (5th Cir. 2012).  Similarly, substantive due process bars arbitrary, wrongful government actions and requires that public officials exercise professional judgment in a nonarbitrary and noncapricious manner, when depriving an individual of a protected property interest.  *Lewis v. Univ. of Tex. Med. Branch,* 665 F.3d 625 (5th Cir. 2011).  "A benefit is not a protected entitlement if government officials may grant or deny it in their discretion."  *Ridgely v. FEMA,* 512 F.3d 727, 735 (5th Cir. 2008).

With regard to the rescinded notice of non-renewal, Plaintiff alleged that he was terminated.  The Court found that the Plaintiff was not terminated and deemed this repeated claim to be a misrepresentation.  [Doc. 147 at 12]  The Court dismissed this claim and held that the rescinded notice did not deprive Plaintiff of any life, liberty or property interest.  Plaintiff knew that he was never terminated and that no constitutional interests were affected by the non-renewal letter.  However, he continued to assert the claim without any good faith basis that it could succeed.

Plaintiff claimed that Defendants deprived him of due process by failing to promote him to full professor.  However, as the Court held, the denial of promotion did not deprive Plaintiff of any life, liberty or property interest protected by the Fourteenth Amendment.  "No reasonable faculty member could review these procedures and conclude that there exists an entitlement to

promotion in academic rank." [Doc. 147 at 17] Accordingly, this claim was likewise legally frivolous under *Christiansburg*.

Similarly, with respect to outside employment, Plaintiff had no protected interest in outside employment. Under the IHL Bylaws, USM's President has sole discretion as to whether a faculty member should be permitted to engage in outside employment. Where discretion in the official is a central element of a due process entitlement, Plaintiff's claim was wholly lacking in merit.

Next, Plaintiff claimed that his rights to procedural and substantive due process were violated by unfavorable annual performance reviews for 2008 and 2009. At summary judgment, the Court engaged in a lengthy analysis of the procedures for annual performance reviews and whether Plaintiff's due process rights were violated. Ultimately, the Court concluded that Plaintiff had no protected interest in the outcome of the evaluations and formed no violation arising from Nored and Ledford's involvement. The Court did find a due process violation in the delay in completing the 2009 annual evaluation. However, with respect to Saunders and Lyman, Plaintiff made no allegation and the record contained no evidence that Saunders and Lyman were involved in the evaluation process. "A Section 1983 claimant must establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation." *Jones v. Lowndes County,* 678 F.3d 344, 349 (5th Cir. 2012). Accordingly, where Plaintiff made no effort to establish liability against Saunders or Lyman related to the annual evaluation, the assertion of these claims was frivolous and support an award of attorneys' fees.

Finally, Plaintiff alleged that his due process rights were violated by the Defendants in failing to follow proper procedures in the handling of his internal grievances. The Court found

no evidence that Lyman or Saunders deprived Plaintiff of due process regarding his February and July 2009 grievances. The Court found that Willis may have committed a due process violation but easily dismissed the claim because Willis was not a Defendant. In fact, the Court held that Plaintiff's July 2009 grievance was dismissed due to Plaintiff's own failure to follow USM policies and procedures. At the outset, Plaintiff's claims of due process violations against Saunders and Lyman were frivolous and baseless.

**(D)	Equal Protection**

Plaintiff also claimed that Defendants violated his right to equal protection by treating him differently than other professors because of his religious beliefs. In dismissing the claim, the Court held "Plaintiff has not presented any evidence whatsoever that Defendants' actions 'stemmed from discriminatory intent,' and this claim is based on nothing but speculation and conjecture." [Doc. 147 at 28-29] At the time the Complaint was filed, Plaintiff and his counsel had actual knowledge that no cognizable equal protection claim existed against Saunders or Lyman. As a matter of law, Defendants are entitled to an award of reasonable attorneys' fees incurred defending against this frivolous claim.

**III.	Award of Attorneys' Fees Pursuant to 28 U.S.C. § 1927**

Finally, 28 U.S.C. § 1927 provides:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

In order to justify an award of costs, expenses and attorneys' fees under § 1927, the party must demonstrate more than unintentional or careless actions of delay or duplication. "Proving that an attorney's behavior was both 'vexatious' and 'unreasonable' requires 'evidence of bad

Case 1:12-cv-00041-KS-MTP   Document 199   Filed 06/03/14   Page 16 of 18

faith, improper motive, or reckless disregard of the duty owed to the court.'" *Edwards v. General Motors Corp.,* 153 F.3d 242, 246 (5th Cir. 1998).  Section 1927 authorizes shifting fees associated with the "persistent prosecution of a meritless claim."  *Procter & Gamble v. Amway Corp.,* 280 F.3d 519, 525 (5th Cir. 2002).

As described above, Plaintiff and his counsel asserted claims which he knew were frivolous, baseless, did not lie against particular Defendants, or had no hope of success.[3]  After discovery and depositions, it became obvious that Plaintiff's claims and subjective beliefs could not be substantiated.  Even faced with uncontroverted evidence that he could not prove a *prima facie* case on any of his claims, Plaintiff and his counsel continued to prosecute those claims.  Throughout the course of litigation, Plaintiff and his counsel multiplied the proceedings and forced Defendants to file motions to compel and to enforce Court orders during discovery.

At the summary judgment stage, Plaintiff and his counsel interposed meritless arguments and failed to address fatal flaws in Plaintiff's claims.  For instance, they attempted to include additional claims in pleadings at the summary judgment stage that were not pled in the Complaint.  At trial, they were unable to put on proof to corroborate Plaintiff's self-serving and wide ranging testimony.  These are examples of their effort to complicate and multiply the proceedings and their persistent prosecution of meritless claims.   This is also an example of Plaintiff's counsel litigating frivolous claims in an effort to burden USM.  This case satisfies the requirements for the Court to assess attorneys' fees against Plaintiff and his counsel pursuant to § 1927.

---

[3] The Plaintiff, a licensed attorney, also signed the Complaint as counsel of record.  [Doc. 1-2]

16

**CONCLUSION**

Excluding the time and effort expended in petitioning the Court for attorneys' fees, the USM Defendants have incurred over $200,000 in attorneys' fees. In addition, the USM Defendants have incurred $22,185.78 in expert fees and $ 5,374.71 in non-taxable expenses.[4] As demonstrated above, Plaintiff asserted frivolous, baseless and meritless claims in his Complaint. After the completion of discovery and the depositions of the parties, it should have been obvious that Plaintiff did not have a cognizable claim against USM, Saunders or Lyman. Plaintiff and his counsel's continued prosecution of frivolous claims and their actions undertaken to expand the litigation are tailor made for the imposition of attorneys' fees. Although rare, this is a proper case in which the prevailing defendants have overcome the presumption of unavailability of attorneys' fees.

Accordingly, the USM Defendants respectfully pray that the Court consider the above arguments and determine that Plaintiff's claims meet the test set forth in *Christiansburg* and determine that Plaintiff and his counsel are liable for Defendants' reasonable attorneys' fees and expensespursuant to § 2000e-5(k), § 1988 and § 1927. After such a ruling and if appropriate, Defendants request that the Court allow the submission of time and expense records and other evidence supporting the value of legal services, costs, expenses and the reasonableness of the attorneys' fees sought to be recovered using the "Lodestar" approach.

This the 3rd day of June, 2014.

        Respectfully submitted,

        UNIVERSITY OF SOUTHERN MISSISSIPPI,
        DR. MARTHA SAUNDERS, Officially and
        Individually, and DR. ROBERT LYMAN,
        Officially and Individually

---

[4] The USM Defendants have separately filed a Bill of Costs that are not included in this figure.

BY:   */s/ Donald C. Dornan, Jr.*_____
DONALD C. DORNAN, JR.
LAUREN R. HILLERY

DONALD C. DORNAN (MS Bar No. 6161)
LAUREN R. HILLERY (MS Bar No. 103253)
Dornan Law Office, PLLC
Post Office Box 117
Gulfport, MS 39502
Telephone: (228)575-9882
Facsimile: (228)374-2250
ddornan@dornan-law.com
lhillery@dornan-law.com
Attorneys for University of Southern Mississippi,
Dr. Martha Saunders and Dr. Robert Lyman

## CERTIFICATE OF SERVICE

I, DONALD C. DORNAN, JR., counsel for Defendants, The University of Southern Mississippi, Dr. Martha Saunders and Dr. Robert Lyman, do hereby certify that I have electronically filed the foregoing pleading with the Clerk of Court using the ECF system which sent notification of such filing to the following:

| | |
|---|---|
| Kim T. Chaze, Esquire | Herman M. Hollensed, Jr., Esquire |
| P.O. Box 236 | Bryan Nelson, P.A. |
| Eufaula, AL 36072 | P.O. Box 18109 |
| | Hattiesburg, MS 39404 |

This the 3rd day of June, 2014.

*/s/Donald C. Dornan, Jr.*_____
DONALD C. DORNAN, JR.