IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

DR. THOMAS PAYNE                                                          PLAINTIFF

      V.                                    CAUSE NO.: 1:12 CV 0041-KS-MTP

THE UNIVERSITY OF SOUTHERN
MISSISSIPPI, ET AL                                          DEFENDANTS

**REPLY TO DEFENDANTS'; NORED, LEDFORD, WHITEHEAD AND GANDY, RESPONSE TO MOTION FOR RECONSIDERATION**

COMES NOW, Plaintiff, by and through his attorney, and files his Reply to Defendants' Response to Motion for Reconsideration. In support hereof the following is stated:

**I. CERTAIN LEGAL AUTHORITIES REGARDING JURIDICTION, REGARDING THE APPLICABLE STANDARDS PERTAINING TO SANCTIONS, AND OTHER LEGAL AUTHORITIES WERE NOT ORIGINALLY CONSIDERED BY THE COURT:**

The Motion for Reconsideration narrowly focuses upon the Court's Order dated March 31, 2015 [Doc 227] and its rulings regarding attorney fees. The Motion is clear that it is respectfully contended that the Court has not considered certain salient legal authorities, and certain undisputed facts were not addressed by the Court. Those *undisputed* facts contradict the Court's Order.

Plaintiff respectfully submits that there are clear errors of law and/or fact and that the reconsideration of the legal and factual concerns would prevent manifest injustice.

Rule 59(e) "serve[s] the narrow purpose of allowing a party to correct manifest *errors of law or fact* or to present newly discovered evidence." *Waltman v. Int'l Paper Co.,* 875 F.2d 468, 473 (5th Cir. 1989) *(internal quotations omitted)*.

Especially since: jurisdictional prohibitions are involved, clear Fifth Circuit precedent contradicts the rulings herein, and that the entirety of the required standards regarding sanctions has not been applied to the facts of this case, it is respectfully contended that this Motion for Reconsideration should be well taken. *Id. See Also, FRCP Rule 59 (e).*

II. **THE DEFENDANTS CONCEDE AND DO NOT EVEN ATTEMPT TO CONTRADICT THE FIFTH CIRCUIT REQUIREMENT THAT §1927 SANCTIONS MAY NOT BE IMPOSED *UNLESS EVERY FACET* OF THE LITIGATION IS SANCTIONABLE:**

The Court has already ruled in Plaintiff's favor that most of the case is not sanctionable. [Doc 227]. Moreover, the Defendants have conceded this by not seeking Rule 11 sanctions. They, undoubtedly, recognize that the case does not trigger or is deserving of Rule 11 sanctions. Consequently, it is intellectually inconsistent to seek other sanctions.

Additionally, previous Court rulings favoring Plaintiff demonstrate that sanctions are not awardable since the Court originally ordered that the Jury should resolve the genuine factual disputes.

The Defendants concede and do not attempt to contradict the Fifth Circuit rule of law that 28 U.S.C. §1927 sanctions can not be imposed unless "**every facet of the litigation was patently meritless**, and counsel must have lacked a reason to file the suit and must wrongfully have persisted in its prosecution through discovery, pre-trial motions, and trial." *Procter & Gamble Co. v. Amway Corp.,* 280 F.3d 519, 526 (5th Cir. 2002).

Consequently, §1927 sanctions, as a matter of law, should not be permitted since it is agreed and established that "every facet" was not sanctionable.

Moreover, the initial Complaint, obviously, does not "multiply" proceedings. It is the very beginning of the proceedings. The Fifth Circuit, as shown in the companion Reply, has been explicit on that point. Section 1927 sanctions are also not allowed regarding the initial complaint.

The Defendants must establish by "clear and convincing" evidence that the case was one hundred per cent meritless. *Id.*

It is not sanctionable to represent one's client "with vigor". *Smith v. Our Lady of the Lake Hosp.*, 960 F.2d 439, 448 (5th Cir. 1992). This is particularly true when the information regarding the interaction of the Defendants is largely in the hands of the Defendants. *Id.* at p. 447.

The Defendants undoubtedly recognize the foregoing is true and never attempt to contradict the foregoing. In their initial motion for fees, they, not Plaintiff, should have

informed the Court of the foregoing actual standards so the Court would be fully informed.

None of the cases supporting Plaintiff and his counsel regarding §1927 [pp. 22-27 of supporting Memorandum] [Doc 229] have been contradicted by Defendants. None of the Fifth Circuit standards and requirements contained in those cases have even been contended by Defendants to have been attained.  They have not been attained.

Consequently, it is respectfully contended the Court should reconsider its Order, apply the correct standards, and deny the shifting of fees.

### III. SANCTIONS ARE NOT ALLOWED IN FEDERAL COURT REGARDING A COMPLAINT FILED IN STATE COURT:

This issue has been definitively addressed in the companion Reply to the USM Defendants' response as well as in Plaintiff's principal/original Memorandum of Law herein.  It would be redundant to repeat what has already been replied.

Suffice it to state, not only in *Edwards v. General Motors Corp.,* 153 F. 3d 242, 245 (5th Cir. 1998) but other cases, as shown in the companion Reply, also make clear the obvious: the Court does not have jurisdiction regarding a state filed Complaint. [Please see numerous cases in companion Reply regarding this important issue].

As shown in the companion Reply, in *Edwards* no §1927 sanctions were levied as to the Complaint but only to events long after the Complaint was filed.

Since the Court stated it believed that the Complaint was a "shotgun" Complaint [Plaintiff and his counsel respectfully disagree], the Complaint itself should not be a triggering basis for sanctions- - especially since it passes Rule 11 muster as well as State Court pleading requirements where it was filed.  As stated originally and in the companion Reply, what occurred after the Complaint was filed is not involved in this discussion regarding jurisdiction.

### IV. IT IS EVIDENT FROM THE COURT'S RULING THAT MOST, AND CERTAINLY NUMEROUS, ASPECTS OF THE DEFENDANTS' REQUEST FOR FEES HAS BEEN DENIED:

These Defendants must surely realize that most of their requests for sanctions have been denied.  Thus, much of their position is contradicted by the actual ruling of the Court. [Doc. 227].

It has been repeatedly shown that **<u>Count One</u>** of the Complaint is the 42 U.S.C. §1983 Count applies to the individual Defendants and USM regarding prospective injunctive relief. The issue of retaliation is legally cognizant against individuals under the aegis of §1983.  *Shelton v. Bd. Of Sup.*, 532 F. Appx 558, 562 (5th Cir. 2013).

**<u>Count Two</u>** is the Title VII Count, and it only applies against USM as an entity. That has always been the case. We have shown the wording the Complaint that is intended to make this clear.

Moreover, upon referring to our original Memorandum regarding the motion for summary judgment that stated at p. 3 regarding the "tandem of statutes [§1983 and Title VII]:  [Doc 120].

> "The effect of the tandem of statutes is an intentional duplication established by Congress, and endorsed, of course, by the Supreme Court and the Fifth Circuit. **§1983 addresses individual liability, and Title VII addresses entity liability regarding Equal Protection/Discrimination issues.**
>
> Consequently, *the <u>individual Defendants</u>, as moving forces of constitutional violations, and <u>USM, as an entity</u>, are subject to 42 U.S.C. §1983 and Title VII **respectively**.  Id.*" [p.3]. [doc 120]

The foregoing is the law.  It is not a sanctionable view of the law.  There are in fact and in law two parallel courses sought for relief. *Cervantez v.Bexar County Civil Serv. Comm'n,* 99 F. 3d 730, 734 (5th Cir. 1996). Both are viable.  We did our best to be clear and respectfully submit we were clear. If the good faith attempts to be clear failed, they should not be sanctioned.

Since the only Title VII sanction issue that remains after the Court's ruling is the "who can be an employer issue?", that is one issue.  As to retaliatory misconduct, the individual Defendants were potentially liable under the aegis of §1983 [Count One of Complaint] and USM [the employer] was potentially liable under the aegis of Title VII. [Count Two of Complaint]. Moreover, as to injunctive liability, all defendants, as the Court found, should have proceeded to trial.

It is important to recall, but it was not addressed by the Court or the Defendants, that the amalgam of the §1983 claims proceeded to trial *regarding prospective injunctive relief.*  Part of the reason the Defendants were ordered to trial was based upon the injunctive relief issue.  Consequently, sanctions are not appropriate.

Especially since more clarity was never requested or known to be desired, sanctions are not appropriate. The Court has already found that virtually all of the §1983 claims are not sanctionable, were brought in good faith, were not vexatious, and were not frivolous. As a matter of law and fact, the small remaining portion should also be found not to be sanctionable because the actual legal standards and actual facts do not support the shifting of fees.

## V. AS TO EQUAL PROTECTION ISSUES, THE PROVOST AGREED THAT THE TREATMENT OF PLAINTIFF WAS DISSIMILAR TO THE OTHER PROFESSORS IN THE DEPARTMENT:

All persons similarly situated should be treated alike. *Plyler v. Doe*, 457 U.S. 202, 216 (1982).

It has never been found that Dr. Payne was not similarly situated to other members of his department. However, we know as a fact that he was not "treated alike." *Id*. Not one other Professor was treated as he was treated. The differences in treatment have been well documented.

The Provost testified at his deposition that only Dr. Payne in the Department of Criminal Justice was sent a "letter of elimination". [Doc. 119-3, p.108, [Exhibit 2 to Response to Motion for Summary Judgment]. The evidence showed once Dr. Payne complained about his mistreatment, he was subjected to an immediate and unremitting series of adverse treatments. As the Court found the "temporal proximity" was a significant and substantial evidentiary ground herein. These actions need not be repeated but are summarized in the Complaint, the Counter Affidavit of Dr. Payne, and the original/principal memorandum objecting to the shifting of fees.

The unequal treatment resulted from his complaining and grieving regarding religious issues and mistreatment. His first grievance specifically stated, "directly attributed to my Christian belief…". [Joint Trial Exhibit 1]. His second grievance specifically refers to "retaliation" and "other acts of retaliation". [Joint Trial Exhibit 2]. As the Complaint states he spoke out "regarding the importance to him and others of his Christian faith. Both a public and private concern". *[¶ 20 of Complaint]*. The combination of his speaking out regarding his "Christian beliefs" and complaining about being retaliated against in his grievances and charges of discrimination precipitated the

unequal treatment. The order of events and temporal proximity were found by the Court to be probative and that that evidence should proceed to trial.

Consequently, it is respectfully contended the evidence was substantial and not speculative or conjecture. Indeed, the dissimilarity of treatment is admitted by the Provost.

Consequently, the Court is respectfully asked to reconsider its opinion - - especially since the Provost validated the position of Plaintiff.

## VI. DR. PAYNE WAS THE ONLY DEPARTMENTAL MEMBER TARGETED FOR TERMINATION:

Dr. Payne was written he was being terminated. The Complaint states, *"writing Plaintiff and informing him he would be terminated."* [¶ 17a.] That is exactly what the Complaint states and exactly the truth. Consequently, sanctions should not be imposed for stating that fact.

Additionally, Dr. Payne presented to the Court and Jury considerable evidence as to being forced to retire. The Court agreed that his evidence could be presented. [Doc 170]. It was presented without objection from the Defendants.

This issue ties into the retaliation issue: If the alleged goal was to save money, why would the Criminal Justice Department's tenured, lowest paid professor be targeted for firing if higher paid, untenured, less qualified persons were not? That has never been answered. It does not appear the Court has answered that question.

Moreover, the Fifth Circuit's standards regarding sanctions are even higher than the Supreme Court's. See *Jones v. Texas Tech. Univ.,* 656 F.2d 1137, 1145-46 (5th Cir.1981). **For a case to be frivolous** it must be **"devoid** of **arguable** legal merit or factual support". Id.

Based upon the foregoing legal authorities and facts, the Fifth Circuit standards have not been satisfied by Defendants.

## VII. THE SHOTGUNNED MISSISSIPPI LITIGATION ACCOUNTABILITY ACT IS NOT AN APPROPRIATE BASIS FOR SANCTIONS AS A MATTER OF LAW AND FACT:

The Defendants have shot-gunned their seeking of sanctions and even used a Mississippi statute [in Federal Court] hoping that something would stick.

They did not use the Federal Rules of Civil Procedure [FRCP] Rule 11 because, if they had, they would have had to: use its standards and requirements regarding

sanctions, provide Due Process safe harbor notice, and allow the Plaintiff and his counsel a Due Process opportunity to address any legitimate concerns or contentions of theirs.  [See companion Reply in this regard].

They make an end run around both *FRCP* Rule 11 and *MRCP 11* and seek fees via the Mississippi statute.

However, the Mississippi statute only applies to State of Mississippi courts and filings.  The only filing in the state of Mississippi was the Complaint.

Indeed, the statute states, "If any party files a motion or pleading which, in the opinion **of the court**, is frivolous or filed for the purpose of harassment or delay, **the court** may order . . .".

The statute goes on to refer to the **"Mississippi Rules of Civil Procedure."**

The Mississippi statute is aimed at: Mississippi Rules of Civil Procedure, Mississippi Courts, Mississippi filings, and Mississippi Judges.   As shown, this Court does not have jurisdiction of those matters.

Additionally, by not seeking Rule 11 relief, in either Mississippi or this Court, the Defendants have waived any *alleged* argument they contend they have because the statute is tied to Mississippi's Rule 11 - - the same Rule 11 the Defendants have intentionally avoided.

See *Stevens v. Lake,* 615 So. 2d 1177, 1184 (Miss. 1993) *[the statute "augments Rule 11"].* [speaking of *MRCP* Rule 11].   The interpretations of the statute lead directly to Rule 11 and depends upon Rule 11. "To determine whether a claim is frivolous pursuant to the statute, we examine the definition of 'frivolous' **_found in Rule 11_** **of the Mississippi Rules of Civil Procedure"** *Stevens, supra,* at 1185*.*  If the criteria for Rule 11 {MRCP or FRCP} are not satisfied or pursued, then the Mississippi statute cannot be satisfied either.  The criteria are identical. By not using Rule 11 at either State of Federal level, there is nothing to "augment."

It was never intended for the *FRCP* 11 to be neutered and that all of its Due Process notice requirements be circumvented.  Due Process, at a minimum, demands "notice and opportunity to be heard . . . at a *meaningful time and in a meaningful manner*". *Gibson v. Tex. Dep't of Ins.* 700 F. 3d 227, 229 (5th Cir. 2012).  If the end run is allowed herein it signals to all Defendants in all cases to simply ignore Rule 11 and its

notice requirements.  Clearly, parties should be provided notice that a problem looms, and it should be tended. This provides Due Process fundamental fairness and promotes judicial economy so that the Court is not burdened with unnecessary disputes that could have been avoided if proper notice had been given.

The Mississippi statute goes hand in glove with MRCP 11.  Those state procedures defer to the Federal procedures.  [*See generally Johnson v. Railway Express Agency, Inc.*, *421 U.S. 454 (1975)*]- - especially since the Court does not have jurisdiction regarding what was filed in State Court.

Irrespective of the foregoing, Plaintiff had evident reason for a "hope of success" .That is the applicable standard. *Tricon Metals & Services, Inc. v. Topp,* 537 So.2d 1331,1335 (Miss.1989). There has to be "no hope for success" before the Mississippi statute is triggered. *Id.*

Here, the Court found there was considerably more than a hope of success and ordered that significant aspects of the case should proceed to trial. Also, the Court has found that most of the case was not sanctionable.

## **CONCLUSION**

Consequently, it is respectfully contended that this Motion for Reconsideration should be well taken since there are clear errors of law and/or fact and that the reconsideration of the legal and factual concerns would prevent manifest injustice.

RESPECTFULLY SUBMITTED on this the 7th day of May, A.D., 2015.

                               s/KIM T. CHAZE
                               KIM T. CHAZE
                               Attorney for Plaintiff
                               MSB# 5974
                               7 Surrey Lane
                               Durham, NH 03824
                               603-969-4529
                               *kchaze@comcast.net*

## **CERTIFICATE OF SERVICE**

I, Kim T. Chaze do hereby certify that I have, this day, caused to be filed with the Clerk of the Court Plaintiff's REPLY TO DEFENDANTS'; NORED, LEDFORD, WHITEHEAD AND GANDY, RESPONSE TO MOTION FOR RECONSIDERATION using the ECF system which transmitted notice of filing to all registered attorneys.

THIS 7th day of May, A.D., 2015.

              s/KIM T. CHAZE
              KIM T. CHAZE