IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**THOMAS PAYNE**                                                                                          **PLAINTIFF**

V.                                                          CIVIL ACTION NO. 1:12-CV-41-KS-MTP

**THE UNIVERSITY OF SOUTHERN
MISSISSIPPI, et al.**                                                                              **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

For the reasons below, the Court **denies** Plaintiff's Motion to Compel [262] and **grants in part and denies in part** Defendants' fee applications [232, 252, 253]. The Court awards Defendants Robert Lyman, Martha Saunders, and the University of Southern Mississippi $14,065.50 in attorney's fees. The Court also awards Defendants Lisa Nored, Dale Ledford, Joe Whitehead, and Rex Gandy $7,060.10 in attorney's fees.

### I. BACKGROUND

The Court provided the factual background of this case in a Memorandum Opinion and Order [147] entered on February 21, 2014. *See Payne v. Univ. of S. Miss.*, No. 1:12-CV-41-KS-MTP, 2014 U.S. Dist. LEXIS 22052 (S.D. Miss. Feb. 21, 2014). On May 12-16, 2014, the Court presided over the jury trial of this matter. On May 16, 2014, after the close of Plaintiff's case-in-chief, Defendants moved for judgment as a matter of law under Rule 50. The court granted the motion in a bench ruling and entered a Final Judgment [195] in Defendant's favor. Defendants then filed Motions for Attorney Fees [198, 200], which the Court granted in part and denied in part [227, 251]. Defendants then filed their detailed fee applications [252, 253], which the Court

now addresses.

## II. PLAINTIFF'S MOTION TO COMPEL [262]

Plaintiff filed a Motion to Compel [262] the production of Defendants' counsel's contemporaneous time records. Plaintiff argues that these records are required for proper assessment of Defendants' fee applications. But "[f]ailing to provide contemporaneous billing statements does not preclude an award of fees per se, as long as the evidence produced is adequate to determine reasonable hours." *Kellstrom*, 50 F.3d at 325; *see also Gagnon v. United Technisource Inc.*, 607 F.3d 1036, 1044 (5th Cir. 2010). If a fee application is "not illuminating as to the subject matter or vague as to precisely what was done," the Court has "sufficient leeway within which to *accept or reject*" it. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 326-27 (5th Cir. 1995) (emphasis original). Accordingly, the Court **denies** Plaintiff's Motion to Compel [262].

## III. USM DEFENDANTS' FEE APPLICATION [232, 252]

The USM Defendants submitted an application for $90,257.98 in attorney's fees. In support of their fee request, they provided a lengthy chart of time entries [252-1], organized by date, with descriptions of the tasks performed and a cursory explanation for why they seek reimbursement. They also provided an affidavit from their lead attorney [232-2] and a declaration from an experienced local attorney [232-3].

The Court uses the "lodestar" method to calculate an award of fees for a prevailing party. *Cobb v. Miller*, 818 F.2d 1227, 1231 (5th Cir. 1987). Likewise, the Mississippi Supreme Court has applied the lodestar method when reviewing an award of fees under the Mississippi Litigation Accountability Act ("MLAA"). *Tupelo*

*Redevelopment Agency v. Gray Corp.*, 972 So. 2d 495, 518 (Miss. 2007). First, the Court must "determine the compensable hours from the attorneys' time records, including only the hours reasonably spent." *Shipes v. Trinity Indus.*, 987 F.2d 311, 319 (5th Cir. 1993). Then, the Court "must select an appropriate hourly billing rate based on prevailing community standards for attorneys of similar experience in similar cases." *Id.* The Court then multiplies the number of compensable hours by the hourly rate to produce the "lodestar" amount. *Id.*

"Determinations of hours and rates are questions of fact." *Kellstrom*, 50 F.3d at 324. But the Court's "essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 131 S. Ct. 2205, 2216, 180 L. Ed. 2d 45 (2011).

*A.  Hours*

The Court's first step is to determine "whether the hours claimed were reasonably expended on the litigation." *Kellstrom*, 50 F.3d at 324. "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. The applicant . . . should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Id.* The Court "may reduce the number of hours if the documentation is vague or incomplete." *Id.* "[C]ourts customarily require the applicant to produce contemporaneous billing records or other sufficient documentation so that the district court can fulfill its duty to examine the application for noncompensable hours." *Id.* However, "[f]ailing to provide contemporaneous billing statements does not preclude

an award of fees per se, as long as the evidence produced is adequate to determine reasonable hours." *Kellstrom*, 50 F.3d at 325. If a fee application is "not illuminating as to the subject matter or vague as to precisely what was done," the Court has "sufficient leeway within which to *accept or reject*" it. *Id.* at 326-27 (emphasis original). "Litigants take their chances when submitting such fee applications, as they provide little information from which to determine the reasonableness of the hours expended . . . ." *Id.* at 327.

    1.    *General Defense Entries*

A substantial portion of the hours submitted by Defendants are for the "general defense of all claims." Defendants argue that Plaintiff asserted twenty claims, and that the Court ruled eight of them (40%) were frivolous from the beginning of the litigation. Defendants further argue that the Court awarded fees for three of the frivolous claims from the beginning of litigation through November 25, 2013, and for the remaining five frivolous claims (25%) from the beginning of litigation until their dismissal. Accordingly, Defendants contend that they should receive corresponding fractions of their general defense costs.

The Court disagrees. Virtually all of the tasks recorded in Defendants' "general defense" time entries would have had to be performed regardless of whether Plaintiff asserted any frivolous claims. The frivolous claims may have required Defendants' counsel to spend extra time on "general defense" tasks, but the Court has no way of accurately determining that amount. The Court is certain, though, that it is not as simple as multiplying by the fraction of claims that were frivolous. Moreover, the Court

4

suspects that many tasks required little to no extra time, and it declines to comb through eighty-four pages of billing entries and guess the amount of extra time that was expended on each one.

Accordingly, the Court will not award fees for the following entries from Defendants' chart [252-1]: 1-15, 17-27, 29-38, 40-41, 43-47, 53, 55, 57-61, 63-78, 80-93, 95-135, 138-153, 155-164, 167-168, 171-173, 178-180, 185-186, 188-189, 191-196, 198-200, 204, 207-208, 210, 212-296, 298-310, 312, 314-315, 317, 320-323, 326-335, 339-351, 353-367, 369-371, 373-401, 403-408, 410, 412-422, 426-427, 429-431, 434-441, 450-453, 455-458, 461-466, 472-474, 477, 480, 484-486, 488-493, 495-500, 503-506, 509-515, 518-520, 522-524, 527, 529, 531-533, 536-550, 552-562, 565, 572-573, 579-581, 584-585, and 590.

    2.    *Motion for Fees*

The last nine pages of Defendants' chart [252-1] – entry nos. 604-675 – are tasks related to their motion for attorney's fees. A prevailing party "is entitled to attorney's fees for the effort entailed in litigating a fee claim and securing compensation." *Cruz v. Hauck*, 762 F.2d 1230, 1233 (5th Cir. 1985). However, the Court believes that the amount of time expended by Defendants' counsel on the issue of fees – 100.7 hours – is excessive. The Court declines to address each billing entry, but it generally believes that the time expended on research and drafting was more than what the issues required. Therefore, the Court will only count 40% of the time billed for seeking attorney's fees. Half of these fees shall be paid by Plaintiff, and half shall be paid by his counsel.

5

### 3. *Attendance at Pretrial Conference*

Defendants' counsel billed 16.5 hours for their attendance at the hearing and pretrial conference conducted on February 25, 2014 – entries no. 563 and 564. The Court always requires counsel and the parties to attend the pretrial conference in person, but it does not typically conduct a hearing on the record as it was forced to do in this case. Therefore, the Court will subtract two hours from each entry for the attorneys' travel time insofar as they would have had to come to Hattiesburg regardless of Plaintiffs' counsel's misconduct. The Court will also subtract another two hours from each entry for the time that would have been expended in a normal pretrial conference. These fees shall be paid by Plaintiffs' counsel.

### 4. *Pretrial Order and Exhibits*

In entry nos. 566-571, 574-578, 582-583, 586-589, 591-603, Defendants' counsel billed 25.9 hours for preparation of the pretrial order [174] and organization of trial exhibits. Defendants argue that Plaintiffs' counsel "sought to frustrate the preparation of the pretrial order" by refusing to agree to basic facts, continuing to insist on including claims that were never pled, and refusing to cooperate with respect to the proposed trial exhibits and objections thereto. The Court will not award fees for these billing entries because Defendants provided insufficient evidence that Plaintiff's counsel intentionally sought to frustrate preparation of the pretrial order and trial exhibits.

### 5. *Non-Renewal/Termination/Constructive Discharge*

In entry nos. 79, 311, 313, 318-319, 324-325, 352, 368, 372, 402, 411, 428, and

551, Defendants' counsel billed 8.9 hours for tasks "directly related to [Plaintiff's] frivolous non-renewal claims." Most of these tasks appear to be related to reviewing Plaintiff's sources of income during the years relevant to this lawsuit, investigating the circumstances of Plaintiff's resignation, and the actions of the University's "Priorities Committee" formed to address state budget cuts. The lone exception is entry no. 551, which is described as "telephone call to Powell regarding possible trial testimony," which does not, on its face, relate to Plaintiff's claim that he was terminated. Accordingly, the Court denies Defendants' fee application as to entry no. 551, but grants it as to entry nos. 79, 311, 313, 318-319, 324-325, 352, 368, 372, 402, 411, and 428. These fees shall be split evenly between Plaintiff and his counsel.

    6.    *Equal Protection*

In entry nos. 48 and 482, Defendants' counsel billed 1.6 hours for tasks "directly related to [Plaintiff's] frivolous equal protection claim." These entries are for research and analysis pertaining only to the equal protection claim which the Court ruled was frivolous, and the Court grants Defendants' fee application with respect to them. These fees shall be paid by Plaintiff.

    7.    *Claims Never Pled*

In entry nos. 443 and 516, Defendants' counsel billed 4.8 hours for researching and drafting a response to Plaintiff's counsel's arguments concerning claims that were never actually pled in the complaint. The Court finds that these entries were in direct response to Plaintiff's counsel's misconduct described in previous rulings. Accordingly, the Court grants Defendants' fee application with respect to them. These fees shall be

7

paid by Plaintiff's counsel.

    8.    *All Other Entries*

Virtually all of the tasks recorded in Defendants' remaining billing entries would have had to be performed regardless of whether Plaintiff asserted any frivolous claims. As noted above, Plaintiffs' frivolous claims may have required Defendants' counsel to spend additional time on general defense tasks, but the Court has no way of accurately determining that amount. Furthermore, the Court doubts that it is as simple as multiplying by the fraction of claims that were frivolous. Therefore, the Court denies Defendants' fee application with respect to all remaining billing entries.

    9.    *Summary*

In summary, the Court will count the full hours requested by Defendants for the following billing entries from their chart [252-1]: 48, 79, 311, 313, 318-319, 324-325, 352, 368, 372, 402, 411, 428, 443, 482, and 516. The Court will count 40% of the time billed for entries 604-675, and it will subtract four hours each from entries 563 and 564. The Court will not award fees for any of the remaining hours submitted.

**B.**    **Rate**

A prevailing party's counsel must charge an "appropriate hourly rate based on prevailing community standards for attorneys of similar experience in similar cases." *Shipes*, 987 F.2d at 319. The Court may also consider the attorney's regular rates. *Kellstrom*, 50 F.3d at 328. However, the "hourly fee awarded must be supported by the record; the district court may not simply rely on its own experience in the relevant legal market to set a reasonable hourly billing rate." *McClain v. Lufkin*, 649 F.3d 374,

383 (5th Cir. 2011). The "actual amount paid in fees is not dispositive on the question of reasonable rates," and the Court is not limited to the contract between the party and his counsel. *Kellstrom*, 50 F.3d at 328. If a fee agreement provides a less than reasonable fee, the higher market-based amount should be imposed. *Id.* However, no fee award should provide a windfall to the prevailing party. *Id.*

Defendants' counsel requests fees at a rate of $350.00 per hour for lead attorney Donald Dornan, at a rate of $200.00 per hour for associate Lauren Hillery, and at a rate of $95.00 per hour for paralegal T. McLaurin. However, it is undisputed that Defendants' counsel only billed the Mississippi Institutions of Higher Learning ("IHL") at rates of $165.00 per hour for Mr. Dornan and $140.00 per hour for Ms. Hillery. Defendants provided an affidavit [232-3] from Wynn Clark, a Gulfport, Mississippi attorney, who stated that the hourly rates paid by IHL were "less than the prevailing market rate for attorney's fees in the defense of litigation like what was presented in this case," which "required a level of skill greater than the average civil case." According to Clark, a "reasonable and customary hourly attorney's fee in a complex case of this kind in this area is between $250.00 and $400.00 per hour," and the rates requested by Defendants are reasonable.

Plaintiff objects to the rates requested for Dornan and Hillery insofar as they exceed the actual amount billed to IHL. Plaintiff also provided an affidavit [256-2] from Michael Adelman, an attorney in Hattiesburg, Mississippi, who has practiced law for forty-eight years in the areas of Title VII and 42 U.S.C. § 1983. Adelman stated that his "normal hourly rate varies between $200 and $250 per hour."

9

As noted above, "[a]ttorney's fees awards should not provide a windfall," but "the actual amount paid in fees is not dispositive on the question of reasonable rates." *Kellstrom*, 50 F.3d at 328. "Should a fee agreement provide less than a reasonable fee . . . , the [paying party] shoudl nevertheless be required to pay the higher market-based amount." *Id.* (citing *Blanchard v. Bergeron*, 489 U.S. 87, 96, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1989)). The Fifth Circuit reconciled these apparently contradictory principles by declaring that a reasonable rate is "by definition" not a windfall, regardless of the actual rate billed to the client. *Id.* Therefore, if the compensation agreement with IHL requires a below-market rate, Defendants' counsel may get a higher rate.

This Court has awarded fees at rates similar to that requested by Mr. Dornan. *See Lighthouse Rescue Mission, Inc. v. City of Hattiesburg*, No. 2:12-CV-184-KS-MTP, 2014 U.S. Dist. LEXIS 56412, at *10 (S.D. Miss. Apr. 23, 2014) (awarding $325 per hour in RLUIPA case); *PIC Group, Inc. v. Landcoast Insulation, Inc.*, No. 2:09-CV-662-KS-MTP, 2011 U.S. Dist. LEXIS 88894, at *13 (S.D. Miss. Aug. 9, 2011) (awarding $400 per hour in complex tort/indemnity case). However, Defendants have not cited any Title VII/Section 1983 cases in which the Court has awarded a rate that high. The Court will split the difference between the upper range cited by Adelman [256-2] and the amount requested by Dornan and apply a rate of $300.00 per hour for Dornan. The Court will apply the requested rates of $200 per hour for Hillery and $95.00 for McLaurin.

### C. Johnson *Factors*

After determining the lodestar, the Court may adjust it to account for a variety

of factors. *Shipes*, 987 F.2d at 320. The pertinent factors are:

> (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to this case; (5) the customary fee; (6) whether fee is fixed or contingent; (7) time limitations; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of counsel; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 320 n. 6 (citing *Johnson v. Ga. Highway Express*, 488 F.2d 714, 717-19 (5th Cir. 1974)). When applying the *Johnson* factors, the Court should "be careful, however, not to double count a . . . factor already considered in calculating the lodestar . . . ." *Id.* at 320. The Court must also "explain with reasonable degree of specificity the findings and reasons upon which the award is based, including an indication of how each of the *Johnson* factors was applied." *Id.* Upward adjustments to the lodestar based on these factors "are proper only in certain rare and exceptional cases supported by both specific evidence on the record and detailed findings . . . ." *Id.*[1]

The Court has considered the *Johnson* factors, and concludes that no further adjustments are required beyond those already addressed in the Court's lodestar analysis above. *Id.* (observing that some of the *Johnson* factors are already considered in the lodestar analysis).

---

[1]The MLAA also requires the Court to consider a number of factors when determining the amount of awards to be assessed. *See* MISS. CODE ANN. § 11-55-7. The Court has already considered these factors in deciding to award fees under the MLAA, *Payne v. Univ. of S. Miss.*, No. 1:12-CV-41-KS-MTP, 2015 U.S. Dist. LEXIS 42118, at *6-*8 (S.D. Miss. Mar. 31, 2015), and the same questions are addressed, in pertinent part, by the *Johnson* factors.

*D.     Conclusion*

For the reasons provided above, the Court awards Defendants Robert Lyman, Martha Saunders, and the University of Southern Mississippi $14,065.50 in attorney's fees. Plaintiff shall pay $5,437.75 of the fee award, and Plaintiff's counsel shall pay $8,627.75.

### IV. INDIVIDUAL DEFENDANTS' FEE APPLICATION [253]

The individual Defendants – Lisa Nored, Dale Ledford, Joe Whitehead, and Rex Gandy – submitted an application for $45,304.52 in attorney's fees. In support of their fee request, they provided a lengthy chart of time entries [253-1], organized by date, with descriptions of the tasks performed and a cursory explanation for why they seek reimbursement. They also provided affidavits from their attorneys [253-2, 253-3].

Like the USM Defendants addressed above, the individual Defendants requested a percentage of fees for general defense tasks, based on the ratio of frivolous claims to the total asserted. As noted above, the Court declines to accept this calculation method insofar as many general defense tasks would have had to be performed regardless of frivolous claims, and it is impossible for the Court to determine how much extra time the frivolous claims required.

While the USM Defendants linked specific billing entries to specific frivolous claims, the individual Defendants failed to do so. Rather, for most of their billing entries, they requested a percentage as explained above. Accordingly, the Court is unable to link specific billing entries to specific claims, rendering it impossible for the Court to accurately and precisely assess each billing entry. The Court is mindful,

though, that its "essential goal . . . is to do *rough* justice, not to achieve auditing perfection." *Fox*, 131 S. Ct. at 2216 (emphasis added). Therefore, the Court will award the individual Defendants a percentage of their requested fees equal to the percentage of requested fees awarded to the USM Defendants, split between Plaintiff and his counsel in the same proportion. The Court awards Defendants Nored, Ledford, Whitehead, and Gandy $7,060.10 in attorney's fees.[2] Plaintiff shall pay $2,729.45,[3] and Plaintiff's counsel shall pay $4,330.65.[4]

## V. CONCLUSION

For the reasons above, the Court **denies** Plaintiff's Motion to Compel [262] and **grants in part and denies in part** Defendants' fee applications [232, 252, 253]. The Court awards Defendants Robert Lyman, Martha Saunders, and the University of Southern Mississippi $14,065.50 in attorney's fees. The Court also awards Defendants Lisa Nored, Dale Ledford, Joe Whitehead, and Rex Gandy $7,060.10 in attorney's fees.

SO ORDERED AND ADJUDGED this 19th day of February, 2016.

*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE

---

[2] ($14,065.50 / $90,257.98) ($45,304.52) = $7,060.10

[3] ($5,437.75 / $14,065.50) ($7,060.10) = $2,729.45

[4] $7,060.10 − $2,729.45 = $4,330.65

13